Good morning, Mr. Rendell. May it please the Court, Richard Reandell, plaintiffs and appellants. May I reserve three minutes of my time for rebuttal? Yes, you may. Thank you. The Supreme Court instructs us in Syngenta Crop Protection v. Henson case reported at 537 U.S. 28, and I'm reading from page 32, that the right of removal is entirely a creature of statute, and a suit commenced in state court must remain there until cause is shown for its transfer under some act of Congress. These statutory procedures for removal are to be strictly construed. Due regard for the rightful independence of state governments requires that federal courts scrupulously confine their own jurisdiction to the precise limits which this statute has defined. Many other pronouncements like ilk are made by the Supreme Court. Any removal must strictly comply with the removal statutes, and here the defendants violated just about every provision of the removal statute. It may be déjà vu, but haven't we heard this argument before and it was ruled against you? Absolutely correct, Your Honor. Then why are we arguing it again? Well, Your Honor, and it's difficult to do this, but... It's very difficult. Yes, Your Honor. It's difficult to do this. I'm telling the court that in my humble estimation that the court had committed error when it... Possible. You had a way of correcting us. Did you follow it? I filed a Rule 40 motion, Your Honor. It was denied, and I did not have the, or my client didn't have the wherewithal to go to the Supreme Court. Well, then that's pretty much it, isn't it? Well... At least I missed something somewhere. The case as it was decided in the trial court was never a fraudulent joinder case. It was always a case where the, well, the notice of removal, the operative removal instrument actually says, this is in the appendix and I'm reading from page 29, timeliness of removal, and it says plaintiffs filed this action on or about June 18, 2010. At such time, complete diversity was lacking due to the presence of Peter D'Agostino as a party defendant. So the operative removal instrument says there was no jurisdiction. That's the complete opposite of a fraudulent joinder argument. It's the complete opposite. It can't be more opposite. Because under fraudulent joinder, the non-diverse defendant is completely ignored. This is saying just the opposite, and this is the instrument that removed the case. And they go on. On October 25, 2010, the Superior Court dismissed all claims asserted against Mr. D'Agostino, and Mr. D'Agostino today is no longer a party to this action. Well, that's incorrect because dismissal was itself interlocutory. There was never a final dismissal of Mr. D'Agostino. Counsel, you can use your time as you see fit, but I'm inclined to agree with Judge Troya that this remand issue that you're addressing now is controlled by that earlier decision. And we, even though you feel strongly, I gather, that there were errors in that decision, we're bound by it and there's nothing we can do about it. I mean, you can argue to us if you wish that that was a mistake, but I don't know how you're helping yourself with that argument. Well, under the law of the case doctrine, a subsequent panel is not bound by a decision if there is error. You're not required to perpetuate an error. And what I'm trying to accomplish is to demonstrate the error of the earlier panel. Because as I said, even the trial court judge never found the matter to be a fraudulent jointed case. He, much like in the notice of removal, what he said was, and now I'm on page 64 in the appendix, he says, so the long and short of it, when he reached his ruling on the remand, so the long and short of it is that I think the action of the state court here is determinative. Mr. Rand, I believe the standard is blatant error resulting in serious prejudice. Well, Your Honor, the prejudice... Isn't it a two-parter? The prejudice... So if we blatantly erred, how are you seriously prejudiced? Well, seriously prejudiced because for the next four years, actually six years, we've been litigating this matter in the federal courts where we should have been in the state court the whole time. And so the expense, et cetera, of six years of litigation is the prejudice to my client. The blatant error... And the remedy you're requesting is that we send it to state court so that you can litigate for another six years? I don't believe it would take another six years, Your Honor, but... One year? And eventually more litigation expenses at the same time you're saying that your client couldn't afford to have our blatant error reviewed by the Supreme Court? That's correct, Your Honor. My client did not appeal the decision to the Supreme Court. There's no question about that. Counsel, on the serious prejudice issue, I mean, the errors that you're talking about, if I understand them correctly, they're not jurisdictional errors. They may be, I think the Supreme Court would characterize them as statutory errors, and the fact that such errors may have been made would not justify, as Judge Thompson is suggesting, after all of this expenditure of time and effort to now undo everything that's been done in the federal court and send it back to the state court, that just makes no sense. Well, what the Supreme Court said in the Caterpillar v. Lewis case, which was cited by the earlier panel, and I'm reading now from page 74 of that decision, and Lewis had litigated something in the order of four or six years in the federal courts when the remand was denied. And the Supreme Court said, and Lewis, by timely moving to remand, did all that was required to preserve his objection to removal. An order denying a motion to remand standing alone is obviously not final, and nor is plaintiff required to seek permission to take an interlocutory appeal pursuant to 28 U.S.C. So, much like in Lewis, the plaintiffs here did everything they needed to do in order to preserve their rights to obtain a remand, and in Lewis it was four years, in this case it's about five and a half years. So, having done everything that was necessary to obtain the remand, the district court, having incorrectly decided the case, but not on fraudulent jointed grounds, on the grounds that Heath did not apply the century-year-old voluntary-involuntary rule imposed by the Supreme Court, well, the dismissal of D'Agostino was involuntary, and as argued in the motion to remand, that, well, the plaintiffs first argued that it is evident that the defendants failed to comply with the 30-day rule, and thus they only had left the 1446B, now 3, 30 days from the change rule. But the change, that is the removal of the non-diverse defendant, was not a voluntary change by the plaintiffs. Therefore, because of federalism and because of the possibility that the defendant's dismissal would be reversed by the state court, that the matter had to be remanded under that rule. So, the trial court's error wasn't in applying or misapplying the fraudulent jointer analysis. He never applied that at all. What he did say was that the state court dismissal was determinative, and that's not even an issue when you come to an analysis for fraudulent jointer. So, his error was in not applying the voluntary-involuntary rule. This court, when they reviewed the first panel, they apparently missed the fact that the plaintiffs had argued that the defendants had failed to act within the 30 days. Having made that argument, that by missing the 30 days, all they had left was the 30 days of change, and that was unavailing due to the rule, the voluntary-involuntary rule. There was no grounds for jurisdiction in the federal court. They had missed all the procedural, all the statutory requirements for removal. They violated them all. And under the Supreme Court's instruction, if there's any question as to whether or not there's compliance, well, then it has to be held against the removing parties. And therefore, the matter should have been remanded. Now, the first panel missed that argument, and as a matter of fact, because in its brief, in their brief, the plaintiffs had not, originally in the first case, had not even addressed fraudulent jointer, because it wasn't a fraudulent jointer case. That the appellants were actually chastised for not having addressed that until they addressed it in their reply brief. But the only reason it was in the reply brief is that Southworth, the other defendant, that had gotten a 54B ruling so that there was that first appeal, had essentially sold the bill of goods that there was a ruling based on fraudulent jointer, when in fact there was not. And it's only because of that that the plaintiffs even had to address that issue, which really wasn't an issue in this case. But that's the issue that the original panel, first panel, had taken up, as though fraudulent jointer were the basis for the district court's action. It just wasn't. Then there was the, what I refer to as the bait and switch of the grounds, the 1446A grounds, that short and plain statement required under the procedural rules, as I read earlier, the grounds given were the change in circumstances due to the dismissal by the superior court. Well, then, seeing that that wasn't going to, apparently seeing that that wasn't going to prevail, they switched to a fraudulent jointer grounds that just wasn't there. Thank you. Mr. Hartzell, good morning. Good morning, Your Honors. Neil Hartzell on behalf of Caterpillar Inc. and Caterpillar Financial Services Corporation. We are asking that the court affirm the entry of summary judgment on behalf of Caterpillar and Caterpillar Financial in all respects. I don't want to spend a lot of time going over the jurisdictional arguments, but I do want to make a couple of points. The district court had jurisdiction at the time final judgment was entered in this case, because as this court found in what I'll call universal one, the previous appeal, Mr. D'Agostino was never properly joined. Therefore, diversity jurisdiction existed at the time, existed not only from the time the complaint was filed, but the time the final judgment was entered. And the fact that removal took place some months after the complaint was filed in state court is not relevant as that is merely a procedural issue, not a jurisdictional issue, as this court found in universal one and as the Supreme Court has found in Caterpillar v. Lewis. And the reasons for that are considerations of finality, efficiency, and economy. This case has been going on, as the court notes, since 2010. We're now in year six. It's apparent that what turned out to be a simple collection case had been dragged out by the plaintiffs for as long as possible to delay the inevitable. And sending it back to the state court at this point would be a manifest injustice from our perspective. We've had extensive discovery. We've deposed Mr. Cambio, the plaintiff, and the facts showing that there is no claim that the plaintiffs have been fully and fairly adjudicated. Now, the plaintiffs try and make some claim for there's some exceptional circumstances here because of the law of the case doctrine, and therefore this court isn't bound to follow universal one. But the exceptional circumstances requirement, according to this circuit, in the Negron v. Almeida case, which we cite on pages 28, I believe, of our brief, controlling legal authority has changed. We've checked the cases. Nothing has changed. Significant new evidence, not earlier obtainable in the exercise of legalism. They point to no new evidence. Convince the court that a blatant error in the decision will, if uncorrected, result in a serious injustice. The serious injustice, as I just mentioned, would be to us for having to relitigate all this again. So they haven't demonstrated any reason why the law of the case doctrine should not be followed. They raise a couple other points which I want to touch on. They claim this present appeal is different because they say in their 2014 motion for reconsideration of the court's denial of the opposition to the remand motion that was filed some three and a half years after their December 10th motion, that that makes this different. That because they raised it then, they've somehow preserved the issue. I say it's too late. And there's no compelling circumstances that would require reconsideration in those circumstances. They spend a lot of time in their brief talking about the voluntary, involuntary rule. But that's not relevant to this case. What's relevant to this case is there was jurisdiction, as this court previously found, when the complaint was filed originally. There was jurisdiction when final judgment was entered. And since that is the issue, and that was the finding of this court, there's no basis to claim that involuntary, involuntary rule has anything to do with it. They also claim a bait and switch. Well, in the docket number five in the U.S. District Court are our opposition papers to the motion of remand. It says it right there, fraudulent enjoyment. So there was never any bait and switch. And that was before the court back in 2010. They make some other arguments that we don't believe have any merit application of the Brooker-Feldman Doctrine. There was no decision or attempt for the U.S. District Court to decide any issue from the state court here. So we don't think that applies. Fraudulent enjoyment, by hindsight, we don't believe that's applicable because removal occurred after the state dismissal of a nondiverse party. The cases that they cited were all in opposite where they had raised a timely issue previously. I want to note that in the reply brief, nowhere did the plaintiffs address the merits of the underlying summary judgment arguments, which I want to just touch on briefly. The plaintiffs brought claims against Caterpillar, Inc. They brought claims originally against the board members of Caterpillar, Inc. The state court threw out the claims against the board members for failure to state a claim. That's not challenged by the plaintiffs. But apparently they're challenging, as I read the brief, the dismissal of the claims against Caterpillar. But the discovery, which we point out on pages 46 and 47 of our brief and in the supplemental record appendix at 2013, none of the principals, Nick Cambio, his brother Vincent, the manager of New London, Ms. Faria, the bookkeeper, Ms. Dalton, they could identify any facts to support any claims against Caterpillar. So there's no basis for those claims. And summary judgment was proper. The claims against Caterpillar Financial, they brought claims for breach of contract, for an alleged oil agreement, but they had no evidence to support it. The affidavit of Joseph Kohler, which is in the supplemental record appendix 19, lays out the sequence of events about the return of the equipment and the deficiency they were going to owe. And they've not put forth anything in the record, nor did they point to anything in the brief that raises any issue or fact on that. They then say that, well, you violated the covenant of good faith and fair dealing, but in order to do that, you have to show unreasonable behavior, which they can't show. The affidavits that we've submitted, originally the Marion Covell affidavit, which governs the return of the first four pieces of equipment, and then the affidavits of Mr. Fox, that detail the efforts made to collect the additional 18 pieces of equipment, to refurbish them, to put them on the CatUse auction site, which is a nationwide, worldwide auction site. It's the largest market available and the track prices that it received all show that Caterpillar Financial acted reasonably and appropriately and got the best price possible for the equipment. They also raise in their brief the claim that, well, you can't make a claim for damages, Caterpillar Financial, because you didn't sell these pieces of equipment in a commercially reasonable manner. And they cite the Associates Capital Corporation v. Ricardi case, which is a U.S. District Court from the Rhode Island case from 1978. But that case has no applicability here, because that case turns on whether there was commercially unreasonable behavior. And we've submitted affidavits to show that we did comply with all our contractual obligations. We sold the equipment and got the best prices possible in a commercially reasonable manner, so therefore that case doesn't apply. And further, we used the proceeds from all the sales of the equipment that we possessed to reduce the deficiency. There's a statute in Rhode Island, which we cite in our brief. I believe it's 6A-9-625, I think it's D. Once you do that, you can make a claim for damages, as long as you're taking the proceeds and using it to reduce the deficiency, which we've done and which is all laid out in the affidavits. Again, the plaintiffs submit no affidavit on any of that, no affidavit concerning the sale, or no affidavit that anything we did was improper or inconsistent with the contract documents. Finally, they have a fraud claim. There is no evidence of a fraud claim. They have an affidavit of Mr. Cambio, which is in the Supplemental Record of Penance at 115, which is just vague and conclusory, no details, and that was insufficient to sustain any fraud claim. So summary judgment on the claims against Caterpillar Financial in our view was proper. Now, Caterpillar Financial had a counterclaim. Three key elements. There's no dispute that contracts existed between Caterpillar Financial and the plaintiffs as borrowers, plaintiffs in New London, and Universal and the other individuals' territories. The plaintiffs admitted that in the Supplemental Record of Penance at pages 3 and 10. The plaintiffs admitted that they breached the contract. Again, Supplemental Record of Penance at 3 and 10. And that Caterpillar Financial sustained damages. We discussed, as I mentioned earlier, the details of the repossession of this second group of equipment, these 18 pieces. The sales are all laid out, the recent lists of the sales. And we believe we more than satisfied our burden of showing that we did everything in accordance with the contract documents and nothing was improper or in breach of those documents. And the plaintiffs submitted no affidavits contesting the amounts of the sales, the methods under which they were sold, or anything else for that matter. Finally, there was the award of attorney's fees. Caterpillar. There's no basis for the claims against Caterpillar, Inc. And it's beyond dispute that the federal district court has power to award fees in that context if there are frivolous claims, and that's what the court did. I don't believe that the plaintiffs are even contesting the ability of the district court to award fees. Rather, they say that, well, the hourly rates were too high. Is there some validity to that? Isn't the fee award premised on customary fees in the locality so that we don't award New York fees in Rhode Island cases or Boston fees in Rhode Island cases? These aren't New York fees in Rhode Island cases, Your Honor. These are fees that actually had been previously awarded in this case. I think we had at least three different sanctions motions that were granted against the plaintiffs concerning various discovery issues in this case. And in each of those, we submitted a fee affidavit. I'm not saying that there's any problem with the awarding of fees. I thought that the plaintiff's argument was that the fees were not in accordance with Rhode Island attorneys' prices. Nowhere do they submit any affidavit that says that. We submitted an affidavit from Mr. McRodden. Brooks McRodden is a counsel in Rhode Island. He said he's reviewed all the fees and found them reasonable. We complied with the local rules on that. The plaintiffs supplied no affidavits that said otherwise. And my point, Your Honor, in answer to your earlier question was we had previously been awarded fees the same amounts. The hourly rates didn't change, but, of course, in this case we kept them the same in at least three different instances in the district court from discovery motions, which the court reviewed the fees and found them reasonable and awarded them to us, and they paid us. So I think it's too late for them to raise any issue about hourly rates, and that's, in fact, what the district court stated when it awarded the fees. Are you going to be requesting Rhode Island fees for today or Boston fees? The same fees that we've been charging throughout the case, Your Honor. The same hourly rate that we were charging in 2010 would be the same as for today. Caterpillar Financial, there's no dispute that the documents provide for an award of attorney's fees and expenses in the event we have to sue to get our equipment back and to recover any deficiency. And the same arguments that they raised in connection with the Caterpillar Financial fees I'm sorry, the Caterpillar Inc. fees have the same problems that I just outlined. And for all these reasons, we request that the court affirm all the summary judgments below. Thank you. Thank you.  Thank you, Your Honor. As to the issue of fees, the fees awarded to Caterpillar Financial are distinct from the fees awarded to Caterpillar Corporation. The Caterpillar Financial documents do have some provisions for the award of attorney's fees. Caterpillar does not, and Rhode Island adopts or has adopted the American rule so that the Caterpillar would have to absorb its own legal fees unless the case were frivolous. And these jurisdictional issues alone, I submit, are not frivolous. We argued right from the motion for a remand back in 2010 that the federal courts did not have jurisdiction. We argued, and the issue about the bait and switch was or is, that they had stated one set of grounds on their operative motion of notice of removal. Counsel, you have, now that the Southworth Appeal was resolved and you were permitted to continue with your claims against Caterpillar and Caterpillar Inc., it's just been pointed out that in making claims of bad faith, commercial unreasonableness, there are no, there's no evidence submitted in the form of affidavits to support those claims. I mean, those are allegations which are entitled to make, but if you make the allegations, you have to make some attempt to support them in some evidentiary way. And it appears that you have not done that at all, and that certainly lends itself to the suspicion that these are just frivolous claims designed to delay the inevitable day when your client's got to pay these judgments. The affidavits that were submitted by the plaintiffs indicated that their agreement with Caterpillar, this is the 2009 agreement, not the original agreement, back in 2009, when the plaintiffs were having difficulty because of the collapse of the economy in 2008 and thereafter, making the monthly payments, at that point they had owed approximately $3.4 million. And the deal that they made, or thought they had made, was we will turn over $1 million worth of equipment and we will sign this new $2.4 million note. Then for the next 10 months or so, they made the payments on the $2.4 million note. Then they were apprised of the fact that they didn't get the $1 million credit that they had expected. As a matter of fact, they were handed a bill for a few, I think it was $300,000 to $400,000. This was the deficiency when they sold the $1 million worth of equipment. So that's what caused the case to be filed. And the affidavits that were provided indicated just this, that we thought we had raised sufficient material fact to defeat the subject. Thank you.